### IN THE UNITED STATES DISTRICT COURT FOR THE
### NORTHERN DISTRICT OF FLORIDA
### PENSACOLA DIVISION

**ERIC R. PYLES,**
    **Plaintiff,**

**v.**            **Case No: 5:08cv344/RS/MD**

**MICHAEL J. ASTRUE,**
**Commissioner of Social Security,**
    **Defendant.**

_____

### REPORT AND RECOMMENDATION

   This case has been referred to the undersigned magistrate judge pursuant to the authority of 28 U.S.C. § 636(b) and Rules 72.1(A), 72.2(D) and 72.3 of the local rules of this court relating to review of administrative determinations under the Social Security Act and related statutes. It is now before the court pursuant to 42 U.S.C. § 405(g) of the Social Security Act for review of a final determination of the Commissioner of Social Security (Commissioner) denying claimant Pyles' application for a period of disability and disability insurance under Title II of the Act.

   Upon review of the record before this court, it is the opinion of the undersigned that the findings of fact and determinations of the Commissioner are supported by substantial evidence; thus, the decision of the Commissioner should be affirmed.

## PROCEDURAL HISTORY

Plaintiff, Eric Pyles, filed an application for benefits claiming an onset of disability as of May 4, 2004. The application was denied initially and on reconsideration, and Mr. Pyles requested a hearing before an administrative law judge (ALJ). A hearing was held on October 26, 2006 at which Mr. Pyles was represented by counsel and testified. A vocational expert also testified. The ALJ entered an unfavorable decision (tr. 18-25) and Mr. Pyles requested review by the Appeals Council and submitted additional evidence. The Appeals Council considered the new evidence but declined review. The Commissioner has therefore made a final decision, and the matter is subject to review in this court. *Ingram v. Comm'r of Soc. Sec. Admin*, 496 F.3d 1253, 1262 (11th Cir. 2007); *Falge v. Apfel*, 150 F.3d 1320 (11th Cir. 1998).

This timely appeal followed.


## FINDINGS OF THE ALJ

Relative to the issues raised in this appeal, the ALJ found that Mr. Pyles had a severe impairment of history of anterior and posterior cruciate ligament repairs followed by total right knee replacement in October, 2006, but that he did not have an impairment or combination of impairments that met or equaled one of the impairments listed in 20 C.F.R. Part 404, Subpart P; that he had the residual functional capacity to lift and carry ten pounds occasionally and less than ten pounds frequently, could sit for up to six hours and stand and/or walk for up to two hours in an eight hour workday, and should not do repetitive crawling, squatting or climbing; that he could no longer do his prior relevant work as a floor waxer, heavy equipment operator, construction worker or cement finisher; that he was a younger individual with limited education; that transferability of job skills was irrelevant; that using the medical vocational guidelines as a framework, and considering his age,

education, work experience and residual functional capacity, there were jobs in significant numbers in the national economy that he could perform; and that Mr. Pyles was not disabled as defined in the Act (tr. 22-25).

## STANDARD OF REVIEW

In Social Security appeals, this court must review de novo the legal principles upon which the Commissioner's decision is based. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (citing *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986)). There is no presumption that the Commissioner followed the appropriate legal standards in deciding a claim for benefits, or that the legal conclusions reached were valid. *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996); *Lewis v. Barnhart*, 285 F.3d 1329, 1330 (11th Cir. 2002). Failure to either apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal. *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1260 (11th Cir. 2007).

The court must also determine whether the ALJ's decision is supported by substantial evidence. *Moore*, 405 F.3d at 1211 (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158-59 (11th Cir. 2004)). Even if the proof preponderates against the Commissioner's decision, if supported by substantial evidence, it must be affirmed. *Ingram*, 496 F.3d at 1260; *Miles*, 84 F.3d at 1400. Substantial evidence is more than a scintilla but less than a preponderance, and encompasses such relevant evidence as a reasonable person would accept as adequate to support a conclusion. *Moore*, 405 F.3d at 1211 (citation omitted). In determining whether substantial evidence exists, the court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the Secretary's decision. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995). This limited review precludes deciding the facts anew, making credibility determinations, or re-weighing the evidence. *Moore*, 405 F.3d at 1211 (citing *Bloodsworth v. Heckler*, 703 F.2d 1233,

1239 (11ᵗʰ Cir.1983); *Miles v. Chater*, 84 F.3d 1397, 1400 (11ᵗʰ Cir. 1996). Findings of fact of the Commissioner that are supported by substantial evidence are conclusive. 42 U.S.C. § 405(g); *Ingram*, 496 F.3d at 1260.

A disability is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To qualify as a disability the physical or mental impairment must be so severe that the claimant is not only unable to do his previous work, "but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

The social security regulations establish a five-step evaluation process to analyze claims for both SSI and disability insurance benefits. *See Moore,* 405 F.3d at 1211; 20 C.F.R. § 416.912 (2005) (five-step determination for SSI); 20 C.F.R. § 404.1520 (2005) (five-step determination for DIB). A finding of disability or no disability at any step renders further evaluation unnecessary. The steps are:

1.  Is the individual currently engaged in substantial gainful activity?

2.  Does the individual have any severe impairment?

3.  Does the individual have any severe impairments that meet or equal those listed in Appendix 1 of 20 C.F.R. Part 404?

4.  Does the individual have any impairments which prevent past relevant work?

5.  Do the individual's impairments prevent any other work?

These regulations place a very heavy burden on the claimant to demonstrate both a qualifying impairment or disability and an inability to perform past relevant work. *Moore*, 405 F.3d at 1211 (citing *Spencer v. Heckler*, 765 F.2d 1090, 1093 (11ᵗʰ Cir.1985)). If the claimant establishes such an impairment, the burden shifts to the

Commissioner at step 5 to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform. *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001); *Allen v. Bowen,* 816 F.2d 600, 601 (11th Cir. 1987). If the Commissioner carries this burden, claimant must prove that he cannot perform the work suggested by the Commissioner. *Doughty,* 245 F.3d at 1278 n.2; *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987).

## PLAINTIFF'S MEDICAL HISTORY

Mr. Pyles injured his right knee on May 5, 2004 and was referred through the emergency room to Orvis Chitwood, M.D. the same day (tr. 117-23, 241). Dr. Chitwood diagnosed a medial collateral ligament (MCL) tear and a possible anterior cruciate ligament (ACL) tear (tr. 241). Mr. Pyles returned on May 4, 2004, after an MRI. Dr. Chitwood noted that Mr. Pyles' knee was grossly unstable and the MRI showed tears of the posterior cruciate ligament (PCL) and the ACL and probable MCL and meniscus tears (tr. 240). Dr. Chitwood prescribed physical therapy and referred Mr. Pyles to another doctor for repair of the torn ligaments (tr. 240).

On June 7, 2004, Mr. Pyles saw Bruce Hall, M.D., an orthopedic surgeon, who recommended additional therapy to reduce swelling prior to undergoing ACL and PCL reconstruction (tr. 234). Mr. Pyles had physical therapy on June 11, 14, 15, and 21, 2004 (tr. 155-66). He returned to Dr. Hall on June 24, 2004 for a pre-surgical consult (tr. 235). On July 9, 2004, Dr. Hall surgically repaired the PCL, ACL, and medial meniscus (tr. 170). Mr. Pyles started post-operative physical therapy on July 14, 2004, and attended ten additional sessions during July and early August (tr. 126-53).

On July 19, 2004 Mr. Pyles reported that his pain was fairly well controlled (tr. 232). On August 18, 2004, he reported that he felt about 60 percent better with a pain level of 3, although he walked with a limp (tr. 231). He returned on October 7, 2004, and Dr. Hall recommended a home exercise plan (tr. 231).

Sam Banner, D.O., performed a consultative examination of Mr. Pyles on October 18, 2004. He noted a short stiff-legged gait and a limp; 4/5 strength in the right leg with full strength in all other extremities; intact sensory examination; and normal muscle tone and no atrophy of any muscle group (tr. 203).

On January 7, 2005, Dr. Hall noted that Mr. Pyles had regained most of the motion in his knee but with some instability. X-rays showed some medial joint degenerative changes . Dr. Hall felt that Mr. Pyles could stand and walk continuously for 30 minutes, but that he would need to spend most of the day sitting, and should avoid repetitive crawling, squatting, and climbing (tr. 230). On April 12, 2005, Mr. Pyles complained of increasing pain in his right knee, and physical examination revealed some tenderness and instability. X-rays showed progressive medial joint space degenerative arthritis. Dr. Hall diagnosed accelerated medial arthrosis and recommended a total knee replacement. He also felt that Mr. Pyles could lift 10 pounds occasionally, sit for 8 hours, and required a leg brace for ambulation, and that he would likely miss more than four days of work (tr. 351).

On August 1, 2005, Mr. Pyles reported that his knee pain had increased to a level 10. Dr. Hall injected the knee and recommended a total knee replacement (tr. 350). Mr. Pyles returned on December 22, 2005, and Dr. Hall again recommended a total knee replacement. He felt that Mr. Pyles was disabled from his previous occupation and would likely be able to perform only sedentary work even after the knee replacement (tr. 350).

On April 12, 2006, Dr. Hall completed a Physical Capacities Evaluation form. He opined that Mr. Pyles could lift 10 pounds occasionally and 5 pounds frequently; could sit for eight hours a day; required an assistive device for ambulation; could never climb and rarely push and pull with leg/arm controls; and would likely miss more than four days of work per month (tr. 228).

On June 16, 2006 Dr. Hall again recommended a total knee replacement, which was done on October 4, 2006 (tr. 225, 269-78). On October 18, 2006, Dr. Hall noted

that Mr. Pyles had good range of motion in his knee (tr. 339). Mr. Pyles attended physical therapy in November (tr. 348-49). On November 16, 2006, Dr. Hall noted that Mr. Pyles was doing very well with pain and functioning (tr. 347). On January 31, 2007, Mr. Pyles complained of some pain, and Dr. Hall encouraged him to work through the pain and continue his home exercise program (Tr. 346).

At the administrative hearing, held on October 30, 2006, Mr. Pyles testified that he was 47 years old with a ninth grade education and vocational training as a cement finisher (tr. 358059). His knee improved for awhile after his first surgery and then became worse (tr. 367). He was still recovering from the total knee replacement at the time of the hearing (tr. 367-68). He could not stand for more than 30 minutes and could walk only 40 to 50 feet and he had a lot of swelling in his leg (tr. 369-70). His pain was at a level three when he took his pain medication and stayed off his feet, and he elevated his leg after sitting for two hours (tr. 371, 374). His back and hip bothered him and he had intermittent bursitis in his shoulder (tr. 375-77).

## DISCUSSION

Mr. Pyles argues that the ALJ erred reaching his residual functional capacity determination and in relying on the medical vocational guidelines, and that he was disabled from his onset date as a matter of law. The Commissioner argues that the ALJ's findings were supported by substantial evidence and must, therefore, be sustained. The issue thus presented is whether the ALJ's decision that the plaintiff was not disabled, in light of his physical condition, age, education, work experience, and residual functional capacity, is supported by substantial evidence in the record.

1. <u>Residual functional capacity finding.</u>

Mr. Pyles first contends that the ALJ erred in determining his residual functional capacity. This issue turns on the question of whether there was substantial record evidence to support the ALJ's finding that plaintiff could stand

or walk for up to two hours in an eight hour workday. This, in turn, depends on the ALJ'S determination on the extent of Mr. Pyles' pain and the amount of credibility the ALJ assigned to his subjective complaints of pain.

As this court is well aware, pain is treated by the Regulations as a symptom of disability. Title 20 C.F.R. § 404.1529 provides in part that the Commissioner will not find disability based on symptoms, including pain alone, ". . . unless medical signs or findings show that there is a medical condition that could be reasonably expected to produce these symptoms." *Accord* 20 C.F.R. § 416.929. The Eleventh Circuit has articulated the three-part pain standard, sometimes referred to as the *Hand*[1] test, as follows:

> In order to establish a disability based on testimony of pain and other symptoms, the claimant must satisfy two parts of a three-part test showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain.

*Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002) (citing *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991); *Ogranaja v. Commissioner of Social Security*, 186 Fed.Appx. 848, 2006 WL 1526062, *3+ (11th Cir. 2006) (quoting *Wilson*) (Table, text in WESTLAW); *Elam v. Railroad Retirement Bd.*, 921 F.2d 1210, 1216 (11th Cir. 1991).

The Eleventh Circuit has also approved an ALJ's reference to and application of the standard set out in 20 C.F.R. § 404.1529, because that regulation "contains the same language regarding the subjective pain testimony that this court interpreted when initially establishing its three-part standard." *Wilson, supra*, 284 F.3d at 1226. Thus, failure to cite to an Eleventh Circuit standard is not reversible error so long as the ALJ applies the appropriate regulation.

---

[1]*Hand v. Bowen*, 793 F.2d 275, 276 (11th Cir.1986) (the case originally adopting the three-part pain standard).

But "[w]hile both the Regulations and the *Hand* standard require objective medical evidence of a condition that could reasonably be expected to cause the pain alleged, neither requires objective proof of the pain itself." *Elam*, 921 F.2d at 1215. The Eleventh Circuit has held that "pain alone can be disabling, even when its existence is unsupported by objective evidence." *Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995)(citing *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992)); *Walker v. Bowen*, 826 F.2d 996, 1003 (11th Cir. 1987); *Hurley v. Barnhart*, 385 F.Supp.2d 1245, 1259 (M.D.Fla. 2005). However, the presence or absence of evidence to support symptoms of the severity claimed is a factor that can be considered. *Marbury*, 957 at 839-840; *Tieniber v. Heckler,* 720 F.2d 1251, 1253 (11th Cir. 1983).

Finally, if the Commissioner refuses to credit subjective testimony of the plaintiff concerning pain he must do so explicitly and give reasons for that decision. *MacGregor v. Bowen*, 786 F.2d at 1054. Where he fails to do so, the Eleventh Circuit has stated that it would hold as a matter of law that the testimony is accepted as true. *Holt v. Sullivan*, 921 F.2d at 1223; *MacGregor v. Bowen*, 786 F.2d at 1054. Although the Eleventh Circuit does not require an explicit finding as to a claimant's credibility, the implication must be obvious to the reviewing court. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). The credibility determination does not need to cite particular phrases or formulations but it cannot merely be a broad rejection which is not enough to enable the reviewing court to conclude that the ALJ considered the claimant's medical condition as a whole. *Dyer*, 395 F.3d at 1210 (11th Cir. 2005) (internal quotations and citations omitted). And of course, the reasons articulated for disregarding the plaintiff's subjective pain testimony must be based upon substantial evidence. *Wilson*, 284 F.3d at 1225-1226; *Jones v. Department of Health and Human Services*, 941 F.2d 1529, 1532 (11th Cir. 1991); *Hurley*, 385 F.Supp.2d at 1259.

Underlying the *Hand* standard is the need for a credibility determination concerning a plaintiff's complaints of pain. Those complaints are, after all, subjective. "[T]he ascertainment of the existence of an actual disability depend[s] on determining the truth and reliability of [a claimant's] complaints of subjective pain." *Scharlow v. Schweiker*, 655 F.2d 645, 649 (5th Cir. 1981) (holding that the ALJ must resolve "the crucial subsidiary fact of the truthfulness of subjective symptoms and complaints").[2] People with objectively identical conditions can experience significantly different levels of pain, and pain is more readily treated in some than in others. "Reasonable minds may differ as to whether objective medical impairments could reasonably be expected to produce [the claimed] pain. This determination is a question of fact which, like all factual findings by the [Commissioner], is subject only to limited review in the courts . . . ." *Hand, supra,* at 1548-49. It is within the ALJ's "realm of judging" to determine whether "the quantum of pain [a claimant] allege[s] [is] credible when considered in the light of other evidence." *Arnold v. Heckler*, 732 F.2d 881, 884 (11th Cir. 1984). Thus, a physician may be told by a patient that he or she is in pain, and the physician may believe it, but the ALJ is not bound by that. The evidence as a whole, including the existence of corroborating objective proof or the lack thereof, and not just a physician's belief or the plaintiff's claims, is the basis for the ALJ's credibility determination.

Here the ALJ noted that in October 2004 Dr. Banner found that Mr. Pyles limped but was able to get on and off the examining table without difficulty. Thereafter Mr. Pyles' condition improved and Dr. Hall felt that he could return to work in six months. However, the condition worsened and ultimately led to a total knee replacement. After that surgery (and two weeks before the hearing), Dr. Hall noted that Mr. Pyles had good range of motion in his knee (tr. 339). He also was

---

[2] Decisions of the United States Court of Appeals for the Fifth Circuit decided prior to September 30, 1981 are binding precedent in the Eleventh Circuit. *Bonner v. Pritchard*, 661 F.2d 1206, 1207 (11th Cir.1981) (en banc).

attending therapy and Dr. Hall noted that he was "doing very well from the pain as well as the functional standpoint." (Tr. 347). On January 31, 2007, three months after surgery, and after the hearing but before the ALJ's decision, Dr. Hall noted that Mr. Pyles was having "some problems with some pain issues." (Tr. 346). He was encouraged to work through it and continue his home exercise program (*id.*).

The ALJ further noted that in January 2005, six months after his first surgery, Mr. Pyles' main complaint was swelling, and that he did not return to Dr. Hall until eighteen months later, in June 2006 (tr. 23). The ALJ concluded, based on all the evidence, that Mr. Pyles had significant pain before and after his first surgery and, more than two years later, before and after his total knee replacement. However, the evidence did not support a finding that Mr. Pyles was disabled during a twelve month period, and the evidence before the ALJ at the time of his decision was that Mr. Pyles' pain was doing reasonably well. Based on these reasons, the ALJ found Mr. Pyles' claims of disabling pain not entirely credible. Therefore, there was substantial record evidence to support the ALJ's finding that Mr. Pyles could walk and/or stand for two hours in an eight hour workday. *Schmidt v. Apfel*, 496 F.3d 833, 845 (7th Cir. 2007) (holding that in determining a claimant's residual functional capacity, "the ALJ is not required to rely entirely on a particular physician's opinion or choose between the opinions of the claimant's physicians"). Rather, the ALJ develops his own residual functional capacity based on the entire record. Moreover, as discussed in the next section, in sedentary work, "walking and standing are required occasionally[,] not necessarily for two hours at a time. 20 C.F.R. § 404.1567(a). Mr. Pyles has not shown error, and is not entitled to reversal on this ground.

2. <u>Medical vocational guidelines.</u>

Mr. Pyles also contends that the ALJ erred in applying the medical vocational guidelines at step five. In 1978 the Commissioner promulgated medical vocational guidelines ("grids") to help alleviate the need for vocational expert testimony to

determine whether work existed in the national economy within the plaintiff's capabilities. 20 C.F.R. Part. 404, Subpart P, Appendix 2 § 200.00. "Where a plaintiff's qualifications correspond to the job requirements identified by a [grid] rule, the guidelines direct a conclusion as to whether work exists that the plaintiff could perform. If such work exists, the plaintiff is not considered disabled." *Heckler v. Campbell*, 461 U.S. 458, 462, 103 S.Ct. 1952,1955, 76 L.Ed.2d 66 (1983). However,"where any one of the findings of fact does not coincide with the corresponding criterion of a rule, the rule does not apply in that particular case …." 20 C.F.R. Part. 404, Subpart. P, Appendix 2 § 200.00(a). Thus, each of these findings must be supported by substantial evidence.

Plaintiff argues that, because he had non-exertional impairments, the ALJ erred by using the grids to determine whether he was disabled. Once a claimant shows that his impairment prevents him from performing his past relevant work, the burden shifts to the Commissioner, "who must produce evidence to show that the claimant is able to perform alternative substantial gainful work that exists in the national economy." *Cowart v. Schweicker*, 662 F.2d 731, 736 (11th Cir.1981). An ALJ may use the grids to aid in determining "whether [a] claimant has the ability to adjust to other [jobs] in the national economy." *Phillips v. Barnhart*, 357 F.3d 1232, 1239-40. The grids are:

> a series of matrices which correlate a set of variables-the claimant's residual functional capacity ( i.e., the ability, despite impairments, to do sedentary, light, etc. work), age, educational background, and previous work experience. Upon the entry of a set of these variables into the appropriate matrix a finding of disabled or not disabled is rendered.

*Gibson v. Heckler*, 762 F.2d 1516, 1520 (11th Cir.1985) (per curiam). "In appropriate circumstances, the grids may be used" instead of the testimony of a Vocational Expert ("VOCATIONAL EXPERT") to establish whether such work exists and, in turn, whether the claimant is "disabled." *Allen v. Sullivan*, 880 F.2d 1200, 1201-02 (11th Cir.1989) (per curiam). However, the Eleventh Circuit has stated:

> [w]hen the claimant cannot perform a full range of work at a given level of exertion or the claimant has non-exertional impairments that significantly limit basic work skills, exclusive reliance on the grids is inappropriate. In such cases, the [ALJ]'s preferred method of demonstrating that the claimant can perform other jobs is through testimony of a VE.

*Jones v. Apfel*, 190 F.3d 1224, 1229 (11th Cir.1999) (citations omitted). Reliance on the grids is proper where substantial evidence supports the ALJ's determination that the claimant's non-exertional impairments did not significantly limit his ability to perform specified types of work. *Sryock v. Heckler*, 764 F.2d 834, 836 (11th Cir.1985) (per curiam). According to the Social Security regulations,

> [s]edentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567(a). To the extent that Mr. Pyles argues that the existence of non-exertional limitations precludes the use of the grids, his argument is without merit. See *Sryock*, 764 F.2d at 836. Instead, the question the court must answer is whether substantial evidence supports the ALJ's findings that Mr. Pyles' non-exertional impairments do not limit his ability to perform sedentary work. *Id.*

As shown in the previous section, substantial record evidence supports the ALJ's finding that Mr. Pyles did not suffer from non-exertional limitations that significantly impaired his ability to perform sedentary work. As outlined above, the evidence did not support a finding that Mr. Pyles was disabled during a twelve month period, and the evidence before the ALJ at the time of his decision was that Mr. Pyles' pain was doing reasonably well, and based on this the ALJ found that Mr. Pyles could perform the full range of sedentary work (tr. 24). The grids were therefore used appropriately to determine that there were jobs on significant

numbers in the national economy that Mr. Pyles could perform.  Mr. Pyles has not shown error on this ground and he is not entitled to reversal.

Accordingly, it is respectfully RECOMMENDED that the Commissioner's decision be AFFIRMED, that judgment be entered in favor of the defendant, and that the clerk be directed to close the file.

At Pensacola, Florida this 20th day of November, 2009.


/s/ *Miles Davis*

**MILES DAVIS**
**UNITED STATES MAGISTRATE JUDGE**



**NOTICE TO PARTIES**

Any objections to these proposed findings and recommendations must be filed within ten days after being served a copy hereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of any objections shall be served upon any other parties.  Failure to object may limit the scope of appellate review of factual findings.  See 28 U.S.C. § 636; *United States v. Roberts*, 858 F.2d 698, 701 (11th Cir. 1988).